Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
(208) 724-2617
chd@fergusondurham.com
ISB No. 6428
Attorney for Movant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br><br>    v.<br><br><br>SCOTT ALEXANDER LANEY,<br><br>               Defendant. | Criminal Case No. 1:19-cr-00292-BLW<br><br>Civil Case No. _____<br><br><br>**MOTION TO SET ASIDE, VACATE, OR CORRECT SENTENCE**<br><br>**28 U.S.C. § 2255** |

## INTRODUCTION

Scott Alexander Laney moves this Court under 28 U.S.C. § 2255 for relief from the August 26, 2022 Second Amended Judgment in a Criminal Case. (Exhibit A.)

Mr. Laney was deprived of his constitutional right to the effective assistance of counsel under the Sixth Amendment because his counsel unreasonably failed to advise

1

him fully and completely about his right to be tried by a jury. Counsel's deficient performance prejudiced Mr. Laney because it induced him to waive his right to a jury trial. Had he been informed about the full scope of his right to have a jury of his peers unanimously decide whether the Government had proven his guilt beyond a reasonable doubt, he would have insisted on a jury trial rather than a bench trial.

Mr. Laney further alleges that, under *Dubin v. United States*, 599 U.S. __, 143 S.Ct. 1557 (June 8, 2023), his convictions for aggravated identity theft are based on conduct that is not criminal as a matter of law.  The crux of the alleged criminal conduct in this case involved drug testing that was not medically necessary and that was then reimbursed by Medicare and Medicaid. The allegedly unlawful use of the identities of certain medical providers was ancillary to that core fraudulent conduct. Allowing Mr. Laney's aggravated identity theft convictions to stand for conduct that is not criminal would violate his right to due process of law under the Fifth Amendment.

Alternatively, if *Dubin* clarified rather than narrowed the scope of the law, then Mr. Laney's trial counsel was constitutionally ineffective for failing to file a motion for judgment of acquittal on those grounds.

## PROCEDURAL BACKGROUND

1.     On September 10, 2019, the Government charged Laney by Indictment with eight counts of Health Care Fraud, 18 U.S.C. §§ 1347, 2, and eight counts of

2

Aggravated Identity Theft, 18 U.S.C. §§ 1028A and 2. (Case No. 1:19-cr-00292-BLW, Dkt. 1.)

2.      The government alleged that Laney, who was a  regional sales representative for lab testing companies, had engaged in a scheme to defraud Medicare and Medicaid Services ("CMS") by submitting charges to CMS for urine drug screening tests that were not medically necessary and, therefore, not legally reimbursable.

3.      The government further alleged that Laney had also committed aggravated identity theft in relation to his scheme to commit health care fraud by using the names of certain medical providers, and their "National Provider Numbers," without lawful authority.

4.      Laney retained private counsel Dennis Charney to represent him.

5.      At the arraignment, local attorney Randal Barnum substituted for Charney, who lived in Wyoming and did not travel for the hearing. (Dkt. 5.)

6.      Charney filed a motion to dismiss Counts 1 through 8 in the Indictment (Dkt. 16) and a motion for a bill of particulars (Dkt. 9), which were eventually denied. (Dkt. 37.)

7.      While those motions were still pending, on January 17, 2020, Laney signed a "Defendant's Waiver of Jury Trial Pursuant to Fed. Crim. Rule 23." (Dkt. 35.)

8.      The entirety of the document reads:

> I, Scott Laney, acknowledge that I was fully informed of my
> right to trial by jury in this cause. I hereby waive that right,

request the court to try all issues of fact and law without a
jury. Dated this 17th day of January, 2020. (*Id*.)

9.      As the case neared trial, nearly six months after the waiver was filed, the

Government took the case back to the grand jury and obtained a Superseding

Indictment. (Dkt. 47.) The Superseding Indictment added one count each of Health Care

Fraud and Aggravated Identity Theft. (*Id*.)

10.     Laney was arraigned on the Superseding Indictment on June 18, 2020.

(Dkt. 49.) Randall Barnum again stepped in for Charney to represent Laney so that

Charney would not need to travel from Wyoming. (*Id*.)

11.     On the first day of trial, the Government's counsel asked the Court to

inquire "before the bench trial begins if the defendant is, in fact, agreeable to proceeding

that way." (Tr., Vol. 1, p. 15.)

12.     The Court indicated that it believed that the case law required only that a

written waiver be filed, which had been done, but it stated that "there is no reason not

to explore that with Mr. Laney." (Tr., Vol. 1, p. 16.)

13.     The Court then engaged in the following colloquy with Laney:

> THE COURT: Mr. Laney, you understand, do you not, that
> you absolutely have the right --constitutional right to a trial
> by jury in this case? The jury would be composed of 12
> individuals. We would probably have alternates, but only 12
> jurors would actually deliberate to the verdict.

4

You would have the right to participate in selecting the jury, to review their background, to exercise challenges for cause if you felt or your attorney felt that there was some conflict of interest.

You also would have the right to exercise what's called peremptory challenges. In fact, you'd have 10 peremptory challenges to the panel. The jury would be instructed that they are to be judges of the fact in the same way that I am the judge of the law.

But by agreeing to waive or requesting that the jury not be involved in the case, you are, in essence, turning that all over to me and waiving your constitutional right to trial by a jury of your peers.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And after consultation with counsel, that's your decision; correct?

THE DEFENDANT: Yes, it is.

THE COURT: All right. Ms. Crane, is there anything else you want me to cover?

MS. CRANE: No, Your Honor. Thank you.

(Tr., Vol. 1, pp. 15-16.)

14.    The Court then held a six-day bench trial.

15.    The Court, sitting as the factfinder, found Laney guilty as charged.

16.    As to the aggravated identity theft counts specifically, the Court concluded that the government had proven beyond a reasonable doubt "that the

defendant knowingly used without legal authority a means of identification of another person; that he knew that the means of the identification belonged to a real person; and he did so during and in relation to the commission of the health care fraud that was the basis for the Court's verdict in Counts 1 through 8." (Tr., p. 850.)

17.    The Court also found that the Government's witnesses were credible and that Mr. Laney "used healthcare providers' signatures and NPI numbers without the victims' knowledge of the purpose for which they would be used." (Tr., p. 851.)

<u>Motion for a New Trial</u>

18.    Mr. Laney retained new counsel to assist Mr. Charney in drafting a motion for a new trial.

19.    In that motion, he alleged, in part, that his jury trial waiver was not knowing, voluntary, and intelligent. (Dkt. 87.)

20.    Laney submitted his own affidavit and a declaration from trial counsel Charney regarding the decision to waive a jury trial. (Dkts. 88, 89.)

21.    Laney stated in his affidavit that he relied on Charney's advice to be tried by the Court because he trusted Charney. (Exhibit A, ¶ 5.) Charney told him that it would be in his "best interests" to waive the jury. (*Id*. at ¶ 4.) Laney further stated that Charney never advised him that "a jury must be composed of twelve persons from my community, that I could participate in the selection of the jury, or that all members of the jury must unanimously agree on a verdict in a jury trial." (*Id*. at ¶¶ 5-6.) Had he

been told that one juror out of twelve could prevent him from being convicted, he

"would not have waived the jury." (*Id*. at ¶ 12.)

22.     In Charney's declaration, he indicated that he believed that a bench trial

was a good option because "most of the facts were not disputed" and the case "rested

more on an interpretation of complex legal issues as opposed to a factual dispute about

what did or did not happen." (Exhibit B, ¶ 3.) He noted that "[l]ate in 2019, and early in

2020 I explained the *basic* difference between a bench trial and jury trial with Mr. Laney.

I explained why a bench trial might be a better way to present this case given my

analysis of the issues." (*Id*. at ¶ 7)(Emphasis in original). He believed that the magistrate

judge would have fully explained Laney's right to a jury trial, and his explanation of the

differences between a jury and bench trial took that into consideration, but Barnum was

at those appearances so Charney was unaware of what the magistrate judge had said at

the two arraignments. (*Id*. at ¶ 8.) In fact, the magistrate judge simply informed Laney

that he had "a right to trial by jury." (Tr. (10/01/2019), p. 4; Tr. (06/18/2020, p. 4.)

Charney also stated that he did not recall he and Laney discussing the matter again

after the Superseding Indictment but he believes that he should have, as "the elements

of proof were significantly changed by way of the superseding indictment." (Exhibit B,

¶ 9.)

23.     The Court denied the motion for a new trial. The Court noted that "[i]t is

true that the Court did not specifically advise Laney that the jury's verdict must be

7

unanimous ... [but] that shortcoming in the colloquy was offset by Laney's written

waiver which assured the Court that he had been 'fully informed' by his attorney of his

right to a jury trial." (Dkt. 119, pp. 13-14.)

24.     Ultimately, the Court determined that "Laney's post-trial, and post-

conviction, statements do not square with his statements and demeanor prior to trial,

nor his written waiver stating he had been fully advised of his right to a jury trial.

Considering the entire context of the situation the Court finds that Laney knowingly,

intelligently, and voluntarily, waived his right to a trial by jury." (*Id*. at 14.)

Direct Appeal

25.     Laney raised three issues on direct appeal:

> A. Does the record show that Mr. Laney knowingly,
> intelligently, and voluntarily waived his right to a jury trial?
>
> B. Did the court err by denying the motion for a new trial
> based upon the invalid jury trial waiver?
>
> C. At sentencing, did the court err by applying a two-point
> enhancement for obstruction of justice under U.S.S.G. § 3C1.1
> due to Mr. Laney's disbelieved testimony at trial when the
> court expressly found that his testimony was not
> intentionally false?

(Court of Appeals Case No. 21-30041, Dkt. 3, p. 3.)

26.     As to the validity of the waiver, the Government argued, in part, that the

appellate court should look only to Laney's written waiver and the District Court's

colloquy with Laney: "[w]hatever the validity of Laney's post-trial declaration, none of

8

that information was available to the court when it began the bench trial." (*See* Court of

Appeals Case No. 21-30041, Dkt. 14, p. 19.)

27.     In pressing that argument, the Government wrote that "if defense counsel

was ineffective in explaining the waiver, a motion pursuant to 28 U.S.C. § 2255 is the

proper vehicle for relief. *Cf.* [*United States v.*] *Cochran*, 770 F.2d [850,] 851 n.1 {(9th Cir.

1985)]." (*Id*. at p. 19, n. 5.)

28.     As to the claim based solely on the record before the district court, the

Ninth Circuit held that Laney had not rebutted the presumption on the record before it

that his waiver was knowing, intelligent, and voluntary. *United States v. Laney*, 2021 WL

5861286, *1 (9th Cir. 2021).

29.     The Ninth Circuit next held that the district court did not abuse its

discretion in denying Laney's motion for a new trial, in which he also claimed that he

was unaware of certain important aspects of the jury right when he waived it. *Id*.

30.     The Ninth Circuit focused primarily on the district court's handling of the

jury trial waiver. It had nothing definitive to say about the quality of Laney's legal

representation in advising him about waiving his right to a jury trial.

31.     Ultimately, though, the Ninth Circuit vacated Laney's sentence and

remanded for a new sentencing hearing. *Laney*, 2021 WL 5861286,  2.

32.     This Court resentenced Laney on August 26, 2022. (Ex. A.) It imposed the

same sentence of 42 months in prison followed by three years of supervised release.

33.     Laney now accepts the Government's invitation and alleges in this Motion pursuant to 28 U.S.C. § 2255 – which according to the Government is a "proper vehicle for relief" – that his counsel was "ineffective in explaining the waiver."

34.     Laney is serving a term of supervised release and is "in custody" for purposes of bringing this motion. *E.g.*, *Matus–Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

35.     This motion is timely filed within one year of the Second Amended Judgment. 28 U.S.C. § 2255(f)(1).

## CLAIMS FOR RELIEF

### I.

**Scott Laney was deprived of his Sixth Amendment right to the effective assistance of trial counsel because his counsel unreasonably failed to inform him of all material benefits of a trial by jury before he waived that constitutional right.**

36.     Laney incorporates all previous paragraphs.

37.     Laney has also provided a supplemental declaration with his Motion alleging additional facts relevant to this claim. (Exhibit C.)

38.     He alleges that a bench trial was trial counsel's idea because counsel believed that a judge would understand the technical aspects of a complex regulatory scheme better than a jury. He also believed that the facts were not really in dispute. (Laney Supp. Dec., Ex. C, ¶¶ 6, 11.)

39.     Laney deferred to his counsel's expertise. (*Id*. at ¶ 7.)

40.     Other than a single misdemeanor marijuana case from many years ago, Laney had no interaction with the criminal justice system. He was ignorant of criminal law and procedure. He deferred to his counsel's advice. (*Id*. at ¶ 9.)

41.     When trial counsel emailed the form for waiving a jury trial to Laney, Laney responded that he would google the difference between a jury and a bench trial. (*Id*. at ¶ 12.) Needless to say, an attorney acting reasonably professional would not allow his client to google information regarding the waiver of a critical constitutional right.

42.     Laney further responded, "thinking that means a trial with a judge instead of jury." (*Id*.) Counsel wrote back that "Yes. It is the same thing." (*Id*.)

43.     Laney did not search the internet for the differences between a bench trial and a jury trial. (*Id*. at ¶ 13.) Instead, he signed the waiver and returned it. He and trial counsel did not discuss it further. (*Id*. at ¶ 14.)

44.     Trial counsel did not revisit the matter after the Government had filed its Superseding Indictment. (*Id*. at ¶ 14.) Laney did not know he could withdraw his waiver.

45.     Trial counsel did not inform Laney that a jury of twelve must unanimously agree on his guilt. (*Id*. at ¶ 15.)

46.     Trial counsel did not inform Laney that a single juror could hold out for acquittal, which would prevent his conviction. (*Id.* at ¶ 16.)

47.     Trial counsel did not inform Laney that he had the right to have a jury from a fair cross-section of his community. *(Id.* at ¶ 17.)

48.     Trial counsel did not inform Laney about his right to participate in jury selection. (Ex. B, ¶ 7.)

49.     Trial counsel did not inform Laney that waiving a jury in a criminal case is extremely rare. (Ex. C, ¶ 18.)

50.     Trial counsel simply did not inform Laney of any of the specifics and contours of the jury trial right, and the benefits and burdens of a jury trial versus a bench trial.

51.     Laney was unaware of any of these things when he waived his right to a jury. He followed the recommendation of his attorney.

52.     Had he been fully informed, he would not have waived a jury and would have insisted on going to trial with a jury instead of a judge. (Ex. C, ¶ 19.)

53.     The Sixth Amendment to the United States Constitution guaranteed Laney the right to the effective assistance of trial counsel.

54.     Trial counsel's representation fell below an objective standard of professional reasonableness when he advised Laney to waive his right to a jury without informing him of all material aspects of the constitutional right he would be giving up.

12

55.     Trial counsel's unreasonable error prejudiced Laney. Laney was unaware of the critical benefits of the right to a jury trial. But for counsel's failure to fully inform him of the nature of the right, he would not have waived it and would have insisted on going to trial with a jury.

## II.

**Mr. Laney is factually innocent of aggravated identity theft under the holding of *Dubin v. United States*, 599 U.S. __, 143 S.Ct. 1557 (June 8, 2023). The evidence is therefore insufficient, as a matter of law, to support the verdict on those charges, and Mr. Laney's right to due process of law under the Fifth Amendment has been violated.**

56.     Mr. Laney has a due process right under the Fifth Amendment to have each element of a crime charged proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970).

57.     In *Dubin*, decided last June, the United States Supreme Court significantly narrowed the reach of 18 U.S.C. § 1028A, the aggravated identity theft statute.

58.     The Supreme Court held that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'" 143 S. Ct. at 1573.

13

59.     Here, the "crux" of what made Mr. Laney's conduct fraudulent was the billing of CMS for drug tests that were not medically necessary.

60.     The use of medical providers' names and National Provider Numbers was a mere means to that end.

61.     Mr. Laney's conduct was not criminal under 18 U.S.C. § 1028A.

62.     The government therefore did not prove, beyond a reasonable doubt, that Mr. Laney "used" another person's identity "in relation to" health care fraud.

63.     To the extent that Mr. Laney did not raise this issue at the trial level or on direct appeal, any alleged procedural default based on his failure to do so would be excused. *See, e.g., Bousley v. United States*, 523 U.S. 614, 620 (1998) (holding that decisions of the Supreme Court concluding that "a federal criminal statute does not reach certain conduct" is retroactively applicable on collateral review).

64.     Regardless of the Court's decision as to Claim I, Mr. Laney's convictions for aggravated identity theft should be vacated.

**III.**

**Alternatively, Mr. Laney was deprived of his Sixth Amendment right to the effective assistance of trial counsel because his trial counsel unreasonably failed to move or argue to this Court to acquit Mr. Laney of aggravated identity theft on a *Dubin*-like theory that he did not "use" another person's identify "in relation to" health care fraud.**

65.     Should this Court conclude either that *Dubin* only clarified existing law, or that Mr. Laney forfeited a substantive sufficiency of the evidence challenge under a *Dubin*-like theory, he alternatively contends that his counsel was constitutionally deficient in failing to raise the issue before the trial court.

66.     Had counsel done so, there is a reasonable probability that this Court would have granted a motion for a judgment of acquittal.

**PRAYER FOR RELIEF**

WHEREFORE, Scott Laney respectfully requests that the Court:

A.     Order the Government to respond to this Motion;

B.     Proceed on an expedited basis;

C.     Allow discovery, as needed;

D.     Set an evidentiary hearing to resolve disputed issues of material fact; and

E.     Grant the motion, vacate the judgment and reset for a new trial to cure the constitutional errors.

Submitted on this 25th day of August, 2023.

/s/Craig H. Durham
Attorney for Scott Laney

**VERIFICATION**

I am the movant in this matter and I declare under penalty of perjury that the

foregoing is true and correct.

EXECUTED this 23rd day of August 2023.

_____

Scott Alexander Laney

Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
(208) 724-2617
chd@fergusondurham.com
ISB No. 6428
Attorney for Movant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br><br>     v.<br><br><br>SCOTT ALEXANDER LANEY,<br><br>                         Defendant. | Case No. 1:19-cr-00292-BLW<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF SCOTT LANEY'S MOTION BROUGHT UNDER 28 U.S.C. § 2255** |

        The Court and the government are familiar with the material facts, which are set

out in Mr. Laney's § 2255 motion and its supporting exhibits. He incorporates the facts

without repeating them here.

**LEGAL STANDARDS GOVERNING SECTION 2255 MOTIONS**

A defendant who is in custody under a federal sentence may claim the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). A defendant who has completed his prison sentence but is still on supervised release, as Laney, is in "custody" for purposes of a § 2255 proceeding. *E.g., Matus–Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

A § 2255 proceeding is the proper forum in which to raise claims of ineffective assistance of counsel, which typically rely on facts outside of the record. *United States v. Hanoum*, 33 F.3d 1128, 1131-32 (9th Cir.1994). It is timely if it is brought within one year of the date on which the judgment became final. 28 U.S.C. § 2255(f).

The court must hold a hearing on a § 2255 motion when the petitioner has alleged facts that, if true, would entitle him to relief. *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). An evidentiary hearing "is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982). In other words, a district court may dismiss a § 2255 motion summarily only when "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of Rules Governing § 2255 Proceedings; *see also United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998).

2

**ARGUMENT**

**I.**

**Mr. Laney was deprived of his Sixth Amendment right to the effective assistance of trial counsel when his counsel unreasonably failed to inform him of all material benefits of a trial by jury before he waived that constitutional right.**

    A.    <u>Introduction</u>

Laney has alleged facts that would establish that his trial counsel was ineffective regarding his advice to waive a jury trial. Although college-educated, he was inexperienced in criminal procedure. He relied on his trial counsel's knowledge and expertise, but his counsel did not inform him of the material differences between a jury trial and a bench trial. Laney did not know that a jury is composed of twelve members who must unanimously agree on his guilt. He was unaware that a single juror could vote his or her conscience to acquit, and he would not be convicted by that jury. He was unaware that a jury of his "peers" meant a cross-section of the community. It was objectively unreasonable for counsel not to inform Laney of these and other benefits of a jury trial before advising him to waive that right and allow the Court to decide his fate. Had Laney known of these additional protections, he would not have agreed to a bench trial.

B.    Legal Standards

A defendant is entitled to the effective assistance of counsel. U.S. CONST. AMEND. VI. To prove ineffective assistance of counsel, a petitioner must show that (1) his counsel committed errors that fell below an objective standard of reasonably competent representation and (2) the petitioner suffered prejudice as a result of those errors. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). Prejudice means that, but for counsel's errors, there is a reasonable probability that the outcome would have been different. *Id*. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*.

In making this assessment, a court must give a "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 689, 691. But a court's deference to counsel's judgment does not mean that it abdicates review altogether. Offering up post-hoc tactical or strategic reasons is not a magic talisman that forever shields trial counsel's decisions. In all instances, counsel's "strategic" decisions must still be objectively reasonable. *See*, *e.g.*, *Jennings v. Woodford*, 290 F.3d 1006, 1014 (9th Cir. 2002) ("Although defense counsel is empowered to make such strategic decisions, Strickland demands that such decisions be reasonable and informed.").

C.    Discussion

Laney has made a prima facie case that he was deprived of his Sixth Amendment right to the effective assistance of counsel. The case should proceed to an evidentiary hearing.

A defendant's decision to waive a jury trial and to allow a judge to decide his guilt or innocence is one of the most critical decisions that the defendant will make during a criminal prosecution. Trial by a jury is a bedrock component of the American criminal justice system. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). The Founders understood that it was an important backstop against the potential for tyranny when government officials decide the fate of ordinary citizens: "[t]he right includes . . . as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of `guilty.'" *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). "Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses." *Patton v. United States*, 281 U.S. 276, 312 (1930). Whether to be tried by a jury is a decision that is entrusted to the defendant rather than his or her counsel. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977) (Burger, J., concurring)).

Fed. R. Crim. P. 23(a) governs the baseline procedure for waiving a jury trial, which has three requirements:  (1) the waiver is in writing, (2) the government consents, and (3) the court accepts the waiver. *Id*. But because it is a fundamental constitutional

right, a defendant's decision to relinquish the right must also be knowing, voluntary, and intelligent. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986). That is a necessary precondition to a valid Rule 23(a) waiver, *see id.*, meaning that the defendant has "sufficient awareness of the relevant circumstances and likely consequences" of his decision. *Brady v. United States*, 397 U.S. 742, 748 (1970).

When waivers are challenged, courts often rely on a presumption that competent counsel has fully advised the defendant of the risks and benefits of giving up their rights. *E.g.*, *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *United States. v. Bishop*, 291 F.3d 1100, 1114 (9th Cir. 2002) (turning aside a claim of an invalid jury trial waiver, in part, because the defendant "had lawyers at his side at all critical times.")

The courts followed that maxim in this case. In denying Laney's Motion for New Trial, this Court noted that "[i]t is true that the Court did not specifically advise Laney that the jury's verdict must be unanimous ... [but] that shortcoming in the colloquy was offset by Laney's written waiver which assured the Court that he had been 'fully informed' by his attorney of his right to a jury trial." (Dkt. 119, pp. 13-14.) It also wrote that Laney "was advised by competent counsel" and cited *United States v. Bishop*. *Id*. at 14.

On direct appeal, the Court of Appeals affirmed this Court based on the scant record that was developed before Laney's criminal trial about his decision to waive a jury trial. *United States v. Laney*, 2021 WL 5861286, *1 (9th Cir. 2021). The Court of Appeals found that, on the record before it, Laney had not rebutted the presumption that his waiver was knowing, voluntary, and intelligent. *Id*. It further concluded that the district court did not abuse its discretion in denying Laney's motion for a new trial based on the waiver issue, where he offered some additional new facts but where he was still represented by Charney (then with co-counsel). *Id*. at *2. Despite those conclusions, the Court of Appeals had no occasion to address the core Sixth Amendment claim, which is whether trial counsel provided constitutionally unreasonable representation surrounding his advice to Laney to waive a jury.

Laney brings that claim now. He provides additional facts that were neither before this Court nor in the appellate record. Those facts, taken as true, show that he was *not* advised by his counsel of the material differences between a bench and jury trial, beyond the basic fact that a bench trial is with a judge and a jury trial is with a jury. (Laney Supp. Dec., Ex. C, ¶ 11.) In an email exchange on this issue, Laney wrote to his attorney that he would google the differences, but never did and that he just assumed that "means a trial with a judge instead of jury." (*Id*. at ¶ 12.) Trial counsel, who was primarily in Wyoming during the relevant time, responded, "Yes. It is the same thing." (*Id*.) They did not discuss the matter further before the waiver was signed

and filed. (*Id*. at ¶¶ 13-14.) It was never revisited even after the superseding indictment was filed. (*Id*.)

Laney's allegations comport with trial counsel's declaration that he "explained the *basic* difference between a bench trial and jury trial with Mr. Laney." (Ex. B, ¶ 7.) That is, the basic difference was that one was with a judge and the other with a jury. That's it; he explained nothing more. Although he believed that the magistrate judge would have fully explained a jury trial to Laney, *see id*. at ¶ 8, he was wrong, *see* Dkt. 93, Tr. 10/01/2019 p. 4, l. 13-14; Dkt. 94, Tr. 06/18/2020 p. 4, l. 8-9. That mistake was the result of trial counsel not attending the arraignments and sending a fill-in instead.

Compounding the error is that trial counsel's advice that Laney should have a bench trial rested on a faulty premise. Essentially, counsel believed that a judge would understand the complexities of the regulatory code better than jurors and that the judge would be firmer in holding the medical providers to agreements that they signed, even if they did not read the fine print. (Ex. C, ¶ 6.) Counsel further believed that "most of the facts were not disputed, and ... the outcome of the case rested more on an interpretation of complex legal issues as opposed to a factual dispute about what did or did not happen." (Ex. B, ¶ 3.)

The case indeed involved Medicare and Medicaid reimbursement regulations, business contracts, and forms. But the basic facts about who did what, and what they knew when they did it, were very much in dispute. The government argued that Laney

8

either forged or somehow replicated the medical providers' signatures on initiating documents. And, even if the providers did sign some paperwork, the Government contended that they were fraudulently induced to do so, as they had no knowledge that Laney was using their credentials to further a scheme to bill government programs for tests that were not part of medical treatment. Laney denied these allegations and claimed that he informed the providers of the programs to which they were agreeing. The resolution of this had little to do with mind-numbing regulations and more to do with who the trier of fact believed. Jurors are as well equipped, if not better equipped, than judges to make that determination.

Notably, Laney is *not* arguing that counsel's advice that a bench trial was the way to go is a reason to grant relief by itself. But he does contend it was a bad call and that it adds weight to the core of the ineffectiveness claim, which is that counsel did not carefully advise Laney about the nature of the constitutional right that he was giving up. Had he known that the Government needed to convince all twelve lay people, beyond a reasonable doubt, of its theories, which did not really rest on technical matters, he would have held them to that. Counsel failed to reasonably advise his client about this critical right.

Laney has set out a prima facie case that his trial counsel's failure to advise him of the full protections and benefits of a jury trial, and the core differences between a jury trial and a bench trial, was objectively unreasonable under these circumstances. The

error prejudiced Laney. Had he been properly advised, he would have not waived his right and would have insisted on a jury trial. *Cf. Hill v. Lockhart*, 474 U.S. 52, 59, (1985) (holding that to establish prejudice after a defendant has pleaded guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

## II.

**Mr. Laney is factually innocent of aggravated identity theft under the holding of *Dubin v. United States*, 599 U.S. \_\_, 143 S.Ct. 1557 (June 8, 2023). The evidence is therefore insufficient, as a matter of law, to support the verdict on those charges, and Mr. Laney's right to due process of law under the Fifth Amendment has been violated.**

In 2004, President Bush signed into law the crime known as "aggravated identity theft." 18 U.S.C. § 1028A. A defendant is guilty of aggravated identity theft when he or she "during and in relation to [enumerated felonies] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person ..." 18 U.S.C. § 1028A(a)(1). Aggravated identity theft essentially operates as a sentencing enhancement, requiring an additional 24 months of imprisonment to run consecutively to the underlying crime to which it relates. 18 U.S.C. § 1028A(a)(1),(b).

In *Dubin*, the United States Supreme Court limited the reach of the statute. In that case, the defendant had fraudulently billed Medicaid (CMS) for psychological services.

143 S.Ct. at 1563. The patients and services were real, but the defendant lied about the credentials of the examiner so that he would receive a higher rate of pay from CMS. *Id*. The Supreme Court held that the defendant's use of patients' identities in conjunction with the fraudulent billing was not the type of "use" "in relation to" the health care fraud that the statute criminalized. *Id*. at 1566. The crux of the fraud was instead Dubin's lies about the qualifications of the psychological examiners to net a higher return, not the identity of the patients who were examined. *Id*. This was true even though the patients did not give their consent to use their identities on bills that misrepresented the qualifications of the examiner.

The Supreme Court held that a defendant can be guilty of aggravated identity theft only "where the means of identification is at the crux of the underlying criminality, not an ancillary feature of billing." *Id*. at 1572. In reaching its conclusion, the Court clarified that "being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'" *Id*. at 1573.

*Dubin* cited favorably to the Sixth Circuit's test in *United States v. Medlock*, 792 F.3d 700 (6th Cir. 2015). In *Medlock*, the defendants operated an ambulance service that transported patients to kidney dialysis facilities, and CMS reimbursed them for the transport. *Id*. at 703. The defendants falsely claimed that stretchers were necessary during these transports, which allowed a higher rate of reimbursement. Id. at 705. The

11

Sixth Circuit held that using the patients' identities as part of the billing process did not amount to aggravated identity theft. *Id*. 706. That is because the defendants "did not attempt to pass themselves off as anyone other than themselves. [They] misrepresented *how and why* the beneficiaries were transported but did not use the beneficiaries' identities to do so." *Id*. at 707.

In the present case, the government charged Laney with nine counts of committing healthcare fraud by causing invoices to be submitted to CMS on his company's behalf for urine testing that, although actually completed, was falsely labeled as necessary for medical treatment. (Dkt. 47, pp. 4-7.) It alleged aggravated identity theft based on Laney's use of the medical providers' names and NPI numbers to show that the tests had been ordered as part of medical treatment.

Even taking the evidence in a light most favorable to the government, the people being tested and the testing were real; the reason for the testing was not. As in *Dubin*, the "crux" of the fraud, then, was lying to CMS about *why* real urinalysis tests on real individuals were completed. The use of the health care providers' identities was ancillary to that core criminality. The use of their identities had a causal relationship to the fraud, and it was a means to that end, but it was not the crux of it. Laney did not hold himself out as the providers even though, under the government's theory, he falsely implied to others that the providers had authorized the tests.

12

Post-*Dubin*, there is insufficient evidence to support each element of what the Supreme Court has defined as this crime beyond a reasonable doubt. Allowing Laney's convictions for aggravated identity theft to stand for conduct that is not criminal violates his right to due process of law under the Fifth Amendment. *E.g.*, *In re Winship*, 397 U.S. 358, 364 (1970) (holding that due process requires proof of each element beyond a reasonable doubt).

Laney contends that *Dubin* fashioned a new rule that has placed certain conduct outside of the reach of the statute. As such, the issue could not have been raised before now, and it is a newly recognized substantive right that is retroactive. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes[,]" including "decisions that narrow the scope of a criminal statute by interpreting its terms ..." *Welch v. United States*, 578 U.S. 120, 129 (2016) (citation omitted). Laney can seek relief on the merits of this issue for the first time in this collateral action. 28 U.S.C. § 2255(a),(f)(3).

Nevertheless, the government may try to claim that some version of this rule was already in place in the Ninth Circuit at the time of Laney's conviction, citing *United States v. Hong*, 938 F.3d 1040 (9th Cir. 2019). The Court should not be persuaded.

In *Hong*, the defendant, who owned acupuncture and massage therapy clinics, billed CMS for "physical therapy" services that were not completed. 938 F.3d at 1049-1050. At most, these patients received massage therapy. *Id*. Construing the statute

13

somewhat narrowly, the Ninth Circuit concluded that the defendant had not "used" the patients' identities "in relation to" the health care fraud. *Id*. at 1051. In doing so, the Ninth Circuit's decision turned primarily on the fact that "neither Hong nor the physical therapists 'attempt[ed] to pass themselves off as patients,'" meaning that they did not assume the identities of the patients to complete the fraud. *Id*.

*Dubin* went much further. The Supreme Court held that the unlawful use of another person's identity must be the "crux of the underlying criminality." *Dubin*, 143 S. Ct. at 1568. That is, "the means of identification specifically is a key mover in the criminality." *Id*. It cannot be an ancillary feature and must be more than a but-for cause. *Id*. *Hong* did not reach that far.

Should the Court disagree, however, and conclude that *Hong* covered the same ground as *Dubin*, then Laney alternatively alleges that his trial counsel was ineffective in not making this argument to the Court as a basis for acquittal.

14

### III.

**Alternatively, Mr. Laney was deprived of his Sixth Amendment right to the effective assistance of trial counsel because his trial counsel unreasonably failed to move or argue to this Court to acquit Mr. Laney of aggravated identity theft on a theory that he did not "use" another person's identify "in relation to" health care fraud.**

If this Court concludes that *Dubin* did not substantially change the law in the Ninth Circuit, then Laney alternatively contends that his trial counsel was ineffective in not relying on *Hong* to argue for acquittal.

Trial counsel did make a Rule 29 motion for judgment of acquittal at the close of the case, and he gave a closing argument to the Court as factfinder, but he did not argue to the Court that even if the government's theory were taken as true, Laney could not be guilty of aggravated identity theft as a matter of law. An attorney, acting reasonably, would have argued that Laney's situation was similar to Hong's in that even if the Court believed that he engaged in a scheme to submit false invoices to CMS about *why* testing that actually happened on real people was medically necessary, that could not be aggravated identity theft. Much like in *Hong*, this was an overbilling case for testing that occurred. The providers' identification may have been a causative agent but it was not the core of the fraud. There is no reasonable strategic reason for failing to rely on that argument, at least in part.

Had that argument been, made there is a reasonable probability that the Court

would have acquitted Laney of the aggravated identity theft counts.

For those reasons, Laney has made out a prima facie case that he was deprived of

his Sixth Amendment right to the effective assistance of counsel. *Strickland v.*

*Washington*, 466 U.S. 668, 685-86 (1984)(setting out the unreasonable performance and

prejudice elements of the Sixth Amendment test).

## CONCLUSION

Scott Laney respectfully requests that the Court order the government to respond

to his Motion, set the case for an evidentiary hearing, and grant him relief on his claim.

Submitted on this 25th day of August 2023.


/s/Craig H. Durham
Attorney for Movant

# EXHIBIT A

EXHIBIT A

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case                                    (NOTES: Identify Changes with Asterisks (*))
Sheet 1

# United States District Court

District of Idaho

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| SCOTT ALEXANDER LANEY | ) Case Number: 0976 1:19CR00292-001 |
| | ) USM Number: 20090-023 |
| **Date of Original Judgment:** February 22, 2021 | ) |
| (Or Date of Last Amended Judgment) | ) Dennis Benjamin and Dennis Charney |
| | ) Defendant's Attorney |
| | ) |

## THE DEFENDANT:

☐     pleaded guilty to count(s) _____

☐     pleaded nolo contendere to count(s) _____

     which was accepted by the court.

☒     was found guilty on count(s) 1-18 of the Superseding Indictment

     after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18§1347 | Health Care Fraud and/or Aid and Abet | 03/31/2017 | 1-9 |
| 18§1028A | Aggravated Identity Theft and/or Aid and Abet | 03/31/2017 | 10 |

    The defendant is sentenced as provided in pages 2 through ___8___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐     The defendant has been found not guilty on count(s) _____

☐     Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 24, 2022
Date of Imposition of Judgment

Signature of Judge

B. Lynn Winmill, Senior United States District Judge
Name and Title of Judge

August 26, 2022
Date

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case
Sheet 2-Imprisonment

Judgment—Page   Page **2** of **8**

DEFENDANT:      Scott Alexander Laney
CASE NUMBER:    0976 1:19CR00292-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total
term of: 18 months on each of Counts One through Nine, to be served concurrently, and terms of 24 months on each of Counts Ten
through Eighteen, all to be served concurrently with each other but consecutively to the terms imposed on Counts One through Nine to
the extent necessary to produce a total term of 42 months.

The defendant shall self-surrender for service at the institution designation by the Bureau of Prisons. The defendant is allowed four
months to self-surrender to allow time for a COVID-19 vaccination.

☒   The court makes the following recommendations to the Bureau of Prisons:


     The defendant will be placed in a facility at FPC Yankton in Yankton, South Dakota.
     It is recommended the defendant participate in the RDAP program while incarcerated.


☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

     ☐   at   _____   ☐ a.m.   ☐ p.m.   on   _____ .

     ☐   as notified by the United States Marshal.

☒   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐   before 2 p.m. on   _____ .

     ☐   as notified by the United States Marshal.

     ☒   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:


       Defendant delivered on   _____   to   _____
at   _____ , with a certified copy of this judgment.


                                                              _____
                                                                     UNITED STATES MARSHAL


                                                              _____
                                                          By:         DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case
    Sheet 3-Supervised Release

DEFENDANT:      Scott Alexander Laney
CASE NUMBER:     0976 1:19CR00292-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:

> 3 years on Counts 1 through 9 and 1 year on Counts 10 through 18, to be served concurrently.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release on supervision and to a maximum of 10 periodic drug tests a month thereafter for the term of supervision as directed by the probation officer. The cost to be paid by both the defendant and the government based upon the defendant's ability to pay.

    ☐    The above drug testing condition is suspended, based on the courts determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

4. ☒    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*
5. ☐    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*
6. ☐    The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*
7. ☒    You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664. *(Check, if applicable.)*
8. ☒    You must pay the assessment imposed in accordance with 18 U.S.C. § 3013.
9. ☒    If this judgment imposes a fine, you must pay in accordance with the Schedule of Payments sheet of this judgment.
10. ☒    You must notify the court of any material change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case
    Sheet 3A-Supervised Release

Judgment—Page    Page **4** of **8**

DEFENDANT:      Scott Alexander Laney
CASE NUMBER:     0976 1:19CR00292-001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer, unless legitimately asserting your Fifth Amendment right against self-incrimination as to new criminal conduct.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

Upon a finding of a violation of supervision or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

A U.S. probation officer has instructed me on the conditions specified by the Court. I fully understand the conditions and have been provided with a written copy of this judgment containing these conditions.

Defendant's Signature      _____     Date   _____

U.S. Probation Officer/Witness    _____     Date   _____

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case
Sheet 3B-Supervised Release

Judgment—Page     Page **5** of **8**

DEFENDANT:          Scott Alexander Laney
CASE NUMBER:        0976 1:19CR00292-001

# ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall pay any special assessment or other financial obligation imposed by this judgment in accordance with the Schedule of Payments as ordered by the Court.

The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. The defendant shall warn any other occupants the premises may be subject to searches pursuant to this condition.

The defendant shall participate in a program of testing and treatment for drug and alcohol abuse, as directed by the probation officer. The cost to be paid by both the defendant and the government based upon the defendant's ability to pay.

The defendant shall abstain from the use and possession of alcohol and shall not be present in any location where alcohol is the primary item of sale.

The defendant shall participate in a program of mental health treatment, as directed by the probation officer. The cost to be paid by both the defendant and the government based upon the defendant's ability to pay.

The defendant shall not be employed in any capacity related to billing; receiving money; conducting wire transfers; providing investment advice; trading in the stock and commodities markets for others; or given fiduciary responsibility of any kind, nor shall the defendant perform any unpaid or volunteer activities in this area during the term of supervised release without the permission of the probation officer.

The defendant shall provide the probation officer with access to any requested financial information.

The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

Special Conditions of supervised release shall supersede any standard condition that is inconsistent with the special conditions.

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case
      Sheet 5- Criminal Monetary Penalties

Judgment—Page    **Page 6** of **8**

DEFENDANT:      Scott Alexander Laney
CASE NUMBER:     0976 1:19CR00292-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | __Assessment__ | __Fine__ | __Restitution__ | __AVAA Assessment*__ | __JVTA Assessment**__ |
|---|---|---|---|---|---|
| **TOTALS** | **$1,800** | **$2,500** | **$29,795.49** | **Not applicable** | **Not applicable** |

☐    The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| __Name of Payee__ | __Total Loss**__ | __Restitution Ordered__ | __Priority or Percentage__ |
|---|---|---|---|
| Blue Cross of Idaho<br>Attn: Karen Wright<br>PO Box 7408<br>Boise, ID 83707 | $6,324.88 | $6,324.88 | |
| CMS (Medicare)<br>Division of Accounting<br>PO Box 7520<br>Baltimore, MD 21202-0520 | $4,472.59 | $4,472.59 | |
| Idaho Department of Health and Welfare (Medicaid)<br>Bureau of Financial Service<br>Attn: Revenue Unit<br>PO Box 83720 | $10,558.02 | $10.558.02 | |
| Millennium Health<br>16981 Via Tazon<br>Attn: Brian Fowler, General Counsel<br>San Diego, CA 92127 | $8,440.00 | $8,440.00 | |
| **TOTALS** | $29,795.49 | $29,795.49 | |

☐   Restitution amount ordered pursuant to plea agreement    $ _____

☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☒   the interest requirement is waived for the    ☒   fine    ☒   restitution.

     ☐   the interest requirement for the    ☐   fine    ☐   restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case
Sheet 6- Schedule of Payments

| | Judgment—Page | Page **7** of **8** |

DEFENDANT: Scott Alexander Laney
CASE NUMBER: 0976 1:19CR00292-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

   ☐ not later than _____ , or

   ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, ☒ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period
   _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period
   _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to
   term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release
   imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:

   While in custody, the defendant shall submit nominal payments of not less than $25 per quarter pursuant to the Bureau of
   Prisons' Inmate Financial Responsibility Program.

   During the term of supervised release, the defendant shall submit nominal monthly payments of 10% of gross income, but
   not less than $25 per month, unless further modified by the Court. The defendant shall pay any special assessment or
   financial obligation owing to the Clerk of the Court, 550 West Fort Street, Boise, Idaho 83724.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of
Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒ Joint and Several

   Joseph Johnson, case number 0976 1:19CR00155-001, and Scott Alexander Laney, case number 0976 1:19CR00292-001,
   $29,795.45, joint and several, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessment, (8)penalties, and (9) costs, including cost of prosecution and court
costs.

AO 245C (Rev. 10/20) Amended Judgment in a Criminal Case                                                                Not for Public Disclosure
      Sheet 8 – Reason for Amendment

| | Judgment—Page | Page **8** of **8** |
|---|---|---|

DEFENDANT:       Scott Alexander Laney
CASE NUMBER:    0976 1:19CR00292-001

# REASON FOR AMENDMENT

### (Not for Public Disclosure)

Reason for Amendment:

☒  Correction of Sentence on Remand
    (18 U.S.C. § 3742(f)(1) and (2))

☐  Reduction of Sentence for Changed Circumstances
    (Fed. R. Crim. P. 35(b))

☐  Correction of Sentence by Sentencing Court
    (Fed. R. Crim. P. 35(a))

☐  Correction of Sentence for Clerical Mistake
    (Fed. R. Crim. P. 36)

☐  Modification of Supervision Conditions
    (18 U.S.C. §§ 3563(c) or 3583(e))

☐  Modification of Imposed Term of Imprisonment for
    Extraordinary and Compelling Reasons
    (18 U.S.C. § 3582(c)(1))

☐  Modification of Imposed Term of Imprisonment for
    Retroactive Amendment(s) to the Sentencing Guidelines
    (18 U.S.C. § 3582(c)(2))

☐  Direct Motion to District Court Pursuant to
        ☐  28 U.S.C. § 2255 or
        ☐  18 U.S.C. § 3559(c)(7)

☐  Modification of Restitution Order (18 U.S.C. § 3664)

# EXHIBIT B

**DENNIS M. CHARNEY,** ISB # 4610
P.O. Box 171
Ten Sleep, WY  82442
Telephone: (208) 440-7200
Email: dennischarney@gmail.com

Dennis Benjamin, ISB No. 4199
**NEVIN, BENJAMIN, McKAY & BARTLETT LLP**
303 West Bannock
P.O. Box 2772
Boise, ID 83701
Telephone: (208) 343-1000
Email: db@nbmlaw.com

*Attorneys for Defendant*
*Scott Laney*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Prosecution,<br><br>vs.<br><br>SCOTT ALEXANDER LANEY<br><br>     Defendant. | Case No. 1:19-CR-0292-BLW<br><br><br>**DENNIS M. CHARNEY'S DECLARATION IN SUPPORT OF MOTION FOR NEW TRIAL AND REQUEST FOR ENLARGEMENT OF TIME** |

Dennis M. Charney, who deposes, states and avers as follows:

1.      I am counsel for Scott Laney.

2.      Early on in this case, I considered whether or not Mr. Laney would be better served

by trying this case to the court as opposed to a jury.

**DENNIS M. CHARNEY'S DECLARATION IN SUPPORT OF MOTION FOR NEW TRIAL AND REQUEST FOR ENLARGEMENT OF TIME—1**

3.      I considered a bench trial to be a good option as most of the facts were not disputed, and I believed the outcome of the case rested more on an interpretation of complex legal issues as opposed to a factual dispute about what did or did not happen.

4.      In 2013 I moved to the state of Wyoming and have lived here ever since.  I came to know Mr. Laney as he was the son-in-law of a close friend who lives in Idaho.

5.      When the investigation came to light, Mr. Laney asked if I could assist.  I indicated that I could.  I explained that I might have local counsel cover routine appearances to save travel expense.  Ultimately, Randall Barnum agreed to cover these types of appearances.

6.      Mr. Barnum covered the appearances before Judge Dale with respect to the original and superseding indictments.

7.      Late in 2019, and early in 2020 I explained the *basic* difference between a bench trial and jury trial with Mr. Laney.  I explained why a bench trial might be a better way to present this case given my analysis of the issues.

8.      Based on my previous work in Idaho, I believed that Mr. Laney would have had a jury trial fully explained to him at the appearances before the magistrate.  Thus, my explanation of the difference between a jury trial and a trial to the court took into consideration what I believed would have been explained to him at an initial appearance.

9.      I do not believe we re-visited the issue after the government filed the superseding indictment.  In hindsight, I believe I should have because the sentence that could have been imposed on Mr. Laney, as well as the elements of proof, were significantly changed by way of the superseding indictment.

**DENNIS M. CHARNEY'S DECLARATION IN SUPPORT OF MOTION FOR NEW TRIAL AND REQUEST FOR ENLARGEMENT OF TIME—2**

I declare under penalty of perjury under the laws of the United States of America, pursuant to United States Code § 28-1746, that the foregoing is true and correct.

EXECUTED this 19th day of October, 2020.

/s/   Dennis M. Charney
Dennis M. Charney
*Attorney for Scott Alexander Laney*

**DENNIS M. CHARNEY'S DECLARATION IN SUPPORT OF MOTION FOR NEW TRIAL AND REQUEST FOR ENLARGEMENT OF TIME—3**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 19th day of October, 2020 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent a notice of electronic filing to all parties on the electronic mail notice list.


/s/ Dennis M. Charney
Dennis M. Charney


**DENNIS M. CHARNEY'S DECLARATION IN SUPPORT OF MOTION FOR NEW TRIAL AND REQUEST FOR ENLARGEMENT OF TIME—4**

# EXHIBIT C

EXHIBIT C

Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
(208) 724-2617
chd@fergusondurham.com
ISB No. 6428
Attorney for Movant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT ALEXANDER LANEY,<br>　　　　　　　Defendant. | Case No. 1:19-cr-00292-BLW<br><br>**SUPPLEMENTAL DECLARATION OF SCOTT ALEXANDER LANEY** |

I, Scott Alexander Laney, declare under penalty of perjury that the following is true and correct.

　　1.　　I am over the age of 18 and competent to testify.

　　2.　　I previously executed an affidavit in support of a Motion for a New Trial, which was based, in part, on my claim that I did not knowingly waive my right to a jury

1

trial. I stand by that affidavit and incorporate it. Here, I will supplement it with

additional facts relevant to my claim of ineffective assistance of counsel.

      3.     After I received a target letter from the Government, I hired Dennis

Charney as my counsel mainly because my then-wife's father knew him.

      4.     Mr. Charney and I got along fairly well throughout the proceedings, but

he had moved to central Wyoming, and his physical absence created some logistical

problems.

      5.     For instance, he did not appear at either of my arraignments on the

indictment or the superseding indictment. Instead, Randall Barnum stepped in to cover

those hearings. Mr. Charney was unaware of that the magistrate judge had simply told

me, without elaboration, that I had "a right to a jury trial." Mr. Barnum did not advise

me about the scope of that right in any way.

      6.     Going to a bench trial was Mr. Charney's idea. In December of 2018 or

January of 2019, he informed me that he thought Judge Winmill would understand the

medical regulations much better than a jury would. He believed the heart of the defense

was that the Government would be unable to prove that the medical providers had <u>not</u>

signed the initiating documents and that they were then legally responsible for their

agreement.

      7.     I deferred to him because he was the expert.

8.     In the Court's Memorandum Decision and Order denying my Motion for a New Trial, it found that I was "educated, articulate, and ... clearly involved in the preparation of [my] own defense."

9.     I am college educated but not educated in criminal law and procedure. Besides a misdemeanor possession of marijuana case from many years ago, I have had no interaction with the criminal justice system.

10.    The Court also found that I "was advised by competent counsel through the proceedings."

11.    Mr. Charney did not explain any of the specific benefits or burdens of a jury trial. He thought a bench trial was a good idea because he did not believe the facts were really in dispute and that the case would instead turn on technical aspects of complex medical regulations.

12.    When he emailed the waiver form to me, I wrote back that I would "read it and will google bench trial, but thinking that means a trial with a judge instead of jury." Attached is a true and correct copy of that email exchange with counsel. Mr. Charney wrote back that "Yes. It is the same thing."

13.    I relied on Mr. Charney's assurances and did not google the differences. To my recollection, we did not discuss it again. I signed the waiver and sent it back to Mr. Charney.

3

14.     Mr. Charney did not revisit the issue with me after the Government filed a Superseding Indictment adding factual allegations and new counts.

15.     I was never informed, and did not know, that a jury of twelve would have to unanimously agree to find me guilty.

16.     I was never informed, and did not know, that a single juror could hold out for acquittal, which would prevent my conviction.

17.     I was never informed that a jury of my peers meant a cross-section of the community.

18.     I was never informed, and did not know, that waiving a jury trial is extremely rare in a criminal trial. I did not know that this Court had only sat as the factfinder in a criminal case on a couple of occasions in its decades on the bench.

19.     Had Mr. Charney informed me of these things, and of the benefits and burdens of a jury trial versus a bench trial, I would not have waived a jury trial. I would have insisted on going to trial with a jury.

I declare under penalty perjury that the foregoing is true and correct.

Executed this 23rd day of August, 2023.


_____
Scott Laney

Attachment 1 - Ex. C

Begin forwarded message:

**From:** "Dennis Charney" <denn<u>ischarney@gmail.com</u>>
**Subject: Re: Email to Darci**
**Date:** January 14, 2020 at 5:16:20 PM MST
**To:** "Scott Laney" <scott<u>laney@protonmail.com</u>>
**Reply-To:** "Dennis Charney" <denn<u>ischarney@gmail.com</u>>

Yes.  It's the same thing.

On Tue, Jan 14, 2020 at 5:15 PM Scott Laney <scott<u>laney@protonmail.com</u>> wrote:

> I read it and will google bench trial, but thinking that means a trial with just the judge instead of a jury.