JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
DARCI W. CRANE, IDAHO STATE BAR NO. 8852
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT ALEXANDER LANEY,<br><br>　　　　　Movant,<br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | Civil Case: 1:23-cv-00383-BLW<br><br>Criminal Case: 1:19-cr-00292-BLW<br><br>**RESPONSE IN OPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. 2255** |

The United States of America, by and through Joshua D. Hurwit, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, hereby files its opposition to the Movant Scott Laney's Motion for Relief Pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Laney's motion should be denied.

## INTRODUCTION

Broadly, Laney alleges two categories of claims pursuant to § 2255. First, he challenges his waiver of right to jury trial. As this Court and the Ninth Circuit both found, Laney's jury trial

waiver was knowing, voluntary, and intelligent. Laney fails to provide sufficient evidence to show that his counsel acted unreasonably in advising him in that regard. Laney, furthermore, fails to allege the correct standard for, let alone establish prejudice. Second, he asks the Court to overturn his aggravated identity theft convictions because of *United States v. Dubin*, 599 U.S. 110, 143 S. Ct. 1557 (2023). He is not entitled to relief as he was appropriately charged with and convicted of aggravated identity theft, regardless of *Dubin.*

## PROCEDURAL AND FACTUAL BACKGROUND

On September 10, 2019, the grand jury returned an indictment charging Laney with health care fraud and aggravated identity theft. At his arraignment, the magistrate court informed him of his rights, including "[y]ou have the right to a trial by jury." (Cr. Dkt. 92 at 2.)[1] A superseding indictment adding an additional charge of health care fraud and aggravated identity theft was returned on June 10, 2020. (Cr. Dkt. 47.) At Laney's arraignment on the superseding indictment, the magistrate court once again informed him of his rights, including "[y]ou have the right to a trial by jury." (Cr. Dkt. 93 at 2.)

The superseding indictment charged that from 2014 through 2017, Laney orchestrated a scheme to bill health insurance for non-medical, probation and pre-trial release-monitoring urine drug tests ("UDTs"). (Cr. Dkt. 47.) During that time, Laney worked first as a sales representative for Millennium Health ("Millennium") and later in conjunction with Pinnacle Laboratory Services ("Pinnacle"). He implemented the scheme by causing the billings to be submitted by his employer, Millennium, and later a third-party lab, Pinnacle, under the name and National Provider Identifier ("NPI") number of medical professionals who did not order the tests,

---

[1] As used throughout, "Cr. Dkt." refers to the underlying criminal case *United States v. Scott Laney*, 1:19-cr-00292-BLW.
RESPONSE INOPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. 2255 - 2

did not authorize the tests, did not see the purported patients, did not receive the test results, and did not use the test results in any patient treatment. (Cr. Dkt. 47 at 3-9.) As a result, all of the UDTs involved were not reasonable or medically necessary. (Cr. Dkt. 47 at 6.)

Laney was charged with nine counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (Cr. Dkt. 47.) Specifically, the superseding indictment charged that Laney "did knowingly cause others to transfer, possess, or use, without lawful authority, a means of identification of another person." (Cr. Dkt. 47 at 7.) Individually, each count alleged that the means of identification used in connection with the underlying health care fraud billings were the nurse practitioner's name and their NPI number. (Cr. Dkt. 47 at 7-8.) An NPI was a unique number issued by the Centers for Medicaid and Medicare Services to identify a specific health care provider, including a specific nurse practitioner. (Cr. Dkt. 47 at 2.) Each nurse practitioner whose NPI Laney misused was a licensed medical provider in the District of Idaho with a unique NPI number. (Cr. Dkt. 47 at 2.)

### Jury Trial Waiver

On January 24, 2020, the parties filed a joint waiver wherein Laney waived his right to trial by jury pursuant to Federal Rule of Criminal Procedure 23. (Cr. Dkt. 35.) Laney and his trial attorney Dennis Charney signed the waiver. (Cr. Dkt. 35.) The waiver stated "I, Scott Laney, acknowledge that I was fully informed of my right to trial by jury in this cause. I hereby waive that right, request the court to try all issues of fact and law without a jury." (Cr. Dkt. 35.) The Government co-signed the waiver, consenting to Laney's waiver of a jury trial. (Cr. Dkt. 35.)[2]

---

[2] A few days later on January 27, 2020, the Government filed an unopposed motion to correct clerical errors in the indictment. (Cr. Dkt. 36.) Specifically, the appearance of Laney's name in
RESPONSE INOPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. 2255 - 3

On September 11, 2020, the Court held a pretrial conference. (Cr. Dkt. 59.) Laney's attorney Charney, counsel for the Government, the district court judge and its staff attended the conference. (Cr. Dkt. 65.) During the conference, the parties confirmed that the case would proceed via bench trial. (Cr. Dkt. 65.) The decision to proceed via bench trial was formalized in the Court's Pretrial Order. (Cr. Dkt. 59.) That decision was reiterated in Laney's Pre-Trial Brief/Opening Statement. (Cr. Dkt. 60 at 1 ("Mr. Laney has entered a not guilty plea and waived his right to a jury trial.").) The Government's trial brief set forth the relevant facts, statute, and case law regarding bench trials. (Cr. Dkt. 62 at 7-8 ("The waiver in this case satisfies the requirements of Rule 23(a) and *Laney*.").)

**Bench Trial**

The trial began on September 21, 2020. (Cr. Dkt. 79.) Before any witnesses were called, the district court had the following colloquy with Laney:

> THE COURT: "Mr. Laney, you understand, do you not, that you absolutely have the right—constitutional right to a trial by jury in this case? The jury would be composed of 12 individuals. We would probably have alternates, but only 12 jurors would actually deliberate to the verdict. You would have the right to participate in selecting the jury, to review their background, to exercise challenges for cause if you felt or your attorney felt that there was some conflict of interest. You also would have the right to exercise what's called peremptory challenges. In fact, you'd have 10 peremptory challenges to the panel. The jury would be instructed that they are to be judges of the fact in the same way that I am the judge of the law.
>
> But by agreeing to waive or requesting that the jury not be involved in the case, you are, in essence, turning that all over to me and waiving your constitutional right to trial by a jury of your peers.
>
> Do you understand that?
>
> LANEY: Yes, I do.

---

the forfeiture allegation and a typographical error in the dates for two counts. (Cr. Dkt. 36.) The Court granted the unopposed motion. (Cr. Dkt. 38.)
RESPONSE INOPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. 2255 - 4

>     THE COURT: Okay. And after consultation with counsel, that's your decision; correct?
>
>     LANEY: Yes, it is.

(Cr. Dkt. 94 at 15-16.)

Following a five-day bench trial, the Court found Laney guilty on all eighteen counts. (Cr. Dkt. 85.) The Court explained that in addition to "carefully consider[ing] the evidence and testimony presented at trial," it had reviewed all the transcripts and exhibits after trial. (Cr. Dkt. 99 at 3.) In other words, the Court "essentially looked at the evidence twice in its entirety." (Cr. Dkt. 99 at 3.) With respect to the healthcare fraud counts, the Court found that they were "not really disputed." (Cr. Dkt. 99 at 4.) It found that Laney "knowing[ly] and willfully executed a scheme or plan to defraud" Medicare and Medicaid through "material, false, or fraudulent pretenses or representations"; Laney "acted with the intent to defraud"; and "the plan was executed in connection with the payment for health care services." (Cr. Dkt. 99 at 4.)

With respect to the aggravated identity theft counts, the Court found that Laney "knowingly used without legal authority a means of identification of another person"; that Laney "knew that the means of identification belonged to a real person"; and that Laney used the identification "during and in relation" to the healthcare fraud counts. (Cr. Dkt. 99 at 4-5.)

Ultimately, the Court based its verdict on the credibility of the witnesses. (Cr. Dkt. 99 at 5.) Key issues of credibility included "whether the health care providers agreed to act as medical directors for the facilities" and "whether the defendant intentionally and willfully used health care providers' signatures and NPI number without the victims' knowledge of the purpose for which they would be used." (Cr. Dkt. at 5-6.) The Court further noted that "throughout the trial it was clear that, frankly, that most of the issues were not in dispute." (Cr. Dkt. 99 at 5.) In

comparison to the Government's witnesses, the Court found Laney's "version of event was simply not credible." (Cr Dkt. 99 at 6.)

## Motion for a New Trial

Laney moved for a new trial on three grounds: the jury trial waiver was invalid, the Court refused to admit critical evidence, and there was insufficient evidence to support the aggravated identity theft convictions. (Cr. Dkts. 87, 101.) Laney filed two affidavits: his own and one from his trial attorney. (Cr. Dkts. 88, 89.)

The Court rejected Laney's motion. (Cr. Dkt. 119.) The Court explained that, although Laney signed his waiver prior to the amendment of his indictment, those amendments were "clerical in nature" and thus did not "call into question the sufficiency of the waiver." (Cr. Dkt. 119 at 12-13.) Similarly, while the superseding indictment "added one count of healthcare fraud and one count of aggravated identity theft" and "may have marginally affected the penalties Laney was facing," they did "not otherwise significantly impact the Government's case at trial." (Cr. Dkt. 119 at 13.) The Court found that "[t]here is nothing in either of these events that call into question whether Laney's waiver was knowing, voluntary, and intelligent." (Cr. Dkt. 119 at 13.) The Court also explained that it conducted a colloquy with Laney at the start of the trial to advise him of his right to a jury trial. (Cr. Dkt. at 13.) Although the Court acknowledged that it did not advise Laney of the unanimity requirement, it determined that any omission from the colloquy was "offset by Laney's written waiver which assured the Court that he had been 'fully informed' by his attorney of his right to a jury trial." (Cr. Dkt. 119 at 13-14.)

The Court further noted that Laney told the Court in person at the start of trial that he understood and wished to waive his jury trial right. (Cr. Dkt. 119 at 14.) The Court stressed that "Laney was calm and appeared confident in his decision. His mental or emotional state did not

call into question the validity of the waiver." (Cr Dkt. 119 at 14.) The Court also explained that "Laney is educated, articulate, and was clearly involved in the preparation of his own defense" and that he was "advised by competent counsel throughout the proceedings." (Cr. Dkt. 119 at 14.) The Court determined that his post-trial statements did "not square with his statements and demeanor prior to trial, nor his written waiver." (Cr. Dkt. 119 at 14.) Given "the entire context," the Court determined that "Laney knowingly, intelligently, and voluntarily waived his right to a trial by jury." (Cr. Dkt. 119 at 14.)

### Ninth Circuit Court of Appeals

Laney raised two issues on direct appeal. First, he alleged the district court erred in denying his motion for a new trial because his written jury trial waiver was invalid. (Cr. Dkt. 135 at 1.) Second, Laney argued that the district court erred in imposing an obstruction of justice enhancement pursuant to § 3C1.1 of the United States Sentencing Guidelines. (Cr. Dkt. 135 at 4.) In an unpublished memorandum, the Ninth Circuit affirmed the district court's denial of Laney's motion for a new trial and vacated Laney's sentence and remanded for resentencing. (Cr. Dkt. 135.)

The Ninth Circuit began by finding "Laney executed a written jury trial waiver under Rule 23(a) of the Federal Rules of Criminal Procedure." (Cr. Dkt. 135 at 2.) In considering the waiver, the Ninth Circuit found that "Laney has not rebutted the presumption that his [jury trial] waiver was knowing, intelligent, and voluntary." (Cr. Dkt. 135 at 3.) Next, in addressing his claim that the district court erred in denying the motion for a new trial, the Ninth Circuit went further, finding that "[e]ven if Laney had rebutted the presumption, the district court did not err in determining that Laney waived his rights to a jury trial." (Cr. Dkt. 135 at 4.) This conclusion is based on the finding that Laney personally and through counsel confirmed that he wanted to

waive his right to a jury trial. (Cr. Dkt. 135 at 4.) In addition, the district court engaged in a colloquy with Laney prior to trial that the Ninth Circuit found was sufficient to "ensure that Laney understood his right to a jury trial and was competent to waive them." (Cr. Dkt. 135 at 4.)

Because of the Ninth Circuit's findings in relation to the § 3C1.1 enhancement, the case was remanded to the district court for resentencing. (Cr. Dkt. 135 at 5-6.) On August 24, 2022, Laney was again sentenced to serve 42 months imprisonment followed by 3 years supervised release. (Cr. Dkt. 147.)

## ARGUMENT

The Court should deny Laney's Motion because he fails to establish that his sentence was imposed in violation of the Constitution or the laws of the United States. Section 2255 allows a court to grant relief to a federal prisoner who challenges the imposition or length of his custody on four grounds. Relevant here is the first, "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Although Laney alleges his sentence was unconstitutional for two reasons, both claims fail.

First, Laney makes a third attempt to challenge his jury trial waiver. His first two attempts—a motion for a new trial and direct appeal—failed. Nevertheless, Laney renews his attack on the waiver, despite the Ninth Circuit's opinion, this Court's opinion, and that the decision was a deliberate, tactical strategy. To the extent Laney's claim seeks to relitigate this issue again, he is barred from doing so. Even if Laney's claim is not barred, he fails to prove that trial counsel was ineffective and that he was prejudiced. As a result, his claim regarding the jury trial waiver should be denied.

Second, Laney alleges that his aggravated identity theft convictions are no longer valid as a result of the Supreme Court's opinion in *United States v. Dubin*, 599 U.S. 110, 143 S. Ct. 1557

(2023). Regardless of whether *Dubin* is retroactively applicable, this argument fails. Laney's aggravated identity theft convictions and misuse of other people's means of identification is at the crux of what makes the underlying offense criminal.

Laney's current § 2255 motion is strikingly similar in certain respects to his motion for a new trial and direct appeal. In both cases, Laney refused to accept the facts established at trial. He and his attorney engaged in a deliberate strategy when opting for a bench trial. Ever since the Court announced the verdict, Laney has been attempting to rewrite history through self-serving and conclusory affidavits and repetitive arguments.

I. **Laney's Jury Trial Waiver Claim Cannot Be Raised a Second Time and is Meritless**

Laney has already litigated the validity of his jury trial waiver on direct appeal. He is, therefore, barred from relitigating that same claim in a § 2255 motion.

    **A. Legal Standard**

"To be valid, a defendant's waiver of the Sixth Amendment right to a jury trial must be voluntary, knowing, and intelligent." *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018). Federal Rule of Criminal Procedure 23 requires a trial by jury, unless "(1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." Fed. R. Crim. P. 23(a). Generally, adherence to the requirements of Rule 23(a) creates a presumption that the waiver was voluntary, knowing, and intelligent. *Laney*, 881 F.3d at 1106 (citing *United States v. Bishop*, 291 F.3d 1100, 1103 (9th Cir. 2002)). To rebut that presumption in a § 2255 motion, a movant must allege facts detailing how the waiver was made unknowingly. *United States v. Leven*, 842 F.3d 335, 1988 WL 22205 at *3 (9th Cir. 1988) (unpublished). The presentation of "conclusory allegations unsupported by specifics is subject to summary dismissal." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

A claim raised on direct appeal cannot form the basis of a § 2255 motion. *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985); *see also United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000). "When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000).

### B. The Ninth Circuit Found Laney's Jury Trial Waiver Presumptively Valid

Laney validly waived his right to a trial by jury when the parties filed a joint waiver in accordance with Federal Rule of Criminal Procedure 23. (Cr. Dkt. 35.) Laney challenged the validity of the waiver on direct appeal, and the Ninth Circuit found it presumptively valid. (Cr. Dkt. 135 at 2.) Further, the Ninth Circuit found that "Laney has not rebutted the presumption that his [jury trial] waiver was knowing, intelligent, and voluntary." (Cr. Dkt. 135 at 3.) Because Laney challenged the presumptive validity of his waiver on direct appeal, he cannot relitigate that claim here. *See Redd*, 759 F.2d at 701; *Hayes*, 231 F.3d at 1139.

### C. The Ninth Circuit Considered and Found Sufficient the Court's Colloquy with Laney Regarding the Jury Trial Waiver

The Court in Laney's case, did more than is required by Ninth Circuit precedent to ensure the validity of Laney's waiver and the Ninth Circuit affirmed that this Court's procedure ensured that validity. In *United States v. Cochran*, the Ninth Circuit declined to adopt a new rule requiring a district court to conduct a colloquy to determine if the waiver was knowing, voluntary, and intelligent. *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985). On direct appeal, the court affirmed Cochran's jury trial waiver as presumptively valid. *Id.* at 850. The court did, however, state that it "strongly believe[d]" courts should conduct such a colloquy. *Id.* at 852. Although not required, "[a] colloquy will also emphasize to the defendant the

seriousness of the decision; and reduce the likelihood of a later challenge to the validity of the waiver on appeal or in habeas proceedings." *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997).

In considering the presumptive validity of the defendant's written waiver, the *Cochran* court found there were "no additional facts in the record bearing upon the question whether the waiver was voluntary, knowing, and intelligent." *Id.* at 851. In a footnote, the court further explained that when it affirms "failure-to-interrogate cases, we ordinarily do no more than hold that the unsupplemented record does not disclose a basis for reversal." *Id.* at 851, nt. 1. The court continued, stating that "facts outside the record may be introduced to show that the waiver was not made voluntarily, knowingly, or intelligently" in a § 2255 proceeding. *Id.* Laney's appeal is distinguishable from the *Cochran* holding allowing additional facts in a § 2255 as it was not a simple affirmance of a "failure-to-interrogate case."

Laney's case is not the situation envisioned in *Cochran*. There, the court cited examples of prior opinions illustrating the types of cases it considered illustrative of "failure-to-interrogate cases." *See Cochran*, 770 F.2d at 851, nt. 1. First, it cited *Untied States v. Goodwin*, which was a short affirmance finding the defendant and his attorney "signed a jury trial waiver which is valid on its face and there is nothing in the record to indicate that his representation by appointed counsel was so gross on its face as to amount to a denial of due process" and stated that additional facts must be presented in a § 2255 motion. *United States v. Goodwin*, 446 F.2d 894, 895 (9th Cir. 1971). Second, *United States v. Reyes-Meza De Polanco*, 422 F.2d 1304 (9th Cir. 1970), is a perfunctory affirmance in which the court notes that a jury trial waiver was signed, the defendant was not interrogated by the district court about the waiver, and that additional facts to contravene that finding could be developed in a § 2255 proceeding.

RESPONSE INOPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. 2255 - 11

Again, neither of those cases considered additional facts beyond the waiver, as the court did in Laney. On direct appeal, the Ninth Circuit looked to facts beyond the waiver, finding that even if Laney had rebutted the presumption, the Court did not err. (Cr. Dkt. 135 at 4.) This was based on Laney's affirmance "both personally and through counsel" that he wished to waive his right to a jury trial and the Court's pretrial colloquy which was "was sufficient for the district court to ensure Laney understood his rights to a jury trial and was competent to waive them." (Cr. Dkt. 135 at 4.) The additional allegations contained in Laney's second post-trial affidavit and single email exchange, do not change that analysis. Because Laney has already litigated this claim on direct appeal, he is barred from relitigating it here. For that reason, the Court should deny his claim.

## II. Laney Received Effective Assistance of Counsel

Even if the Court finds that Laney's claim regarding his waiver is not barred, he cannot prove that his counsel's conduct was unreasonable or that he was prejudiced.

### A. Legal Standard

To prevail on a claim of ineffective assistance of counsel, a movant must show: 1) that his counsel's conduct fell below a standard of objective reasonableness, and 2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). When a court applies the *Strickland* standard, it "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. There are numerous ways for an attorney to "provide effective assistance in any given case." *Id.* In evaluating an ineffective assistance of counsel claim, the court may consider the performance and prejudice components in either order. *Id*. At 697. The court need not consider one component if there is an insufficient showing of the other. *Id.*

## B. Trial Counsel's Conduct was Strategic and Objectively Reasonable

"Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986). In *Ferreira-Alameda*, the defendant waived his right to a jury trial and stipulated to the record of a trial of his co-defendants. *Id.* at 1252. Certain concessions were made by both parties and the court found the defendant guilty. *Id.* Among other claims, the defendant challenged the validity of his waiver of right to jury trial and alleged ineffective assistance of counsel on appeal. *Id.* at 1252. After finding the defendant's waiver was knowing, voluntary, and intelligent, the court considered and quickly dispatched the ineffective assistance of counsel claim. *Id.* at 1253-1254. Even though the defense attorney did not know the precise facts stipulated to, the court found he knew of the implications and retained the right to object, which was sufficient to find he did not act incompetently. *Id.* at 1254. The court further found the defendant failed to show prejudice. *Id.*

"Mere criticism of a trial tactic is not sufficient to support a charge of ineffective representation." *Ferreira-Alameda*, 815 F.2d at 1254. Criticism is what Laney offers to the court as ineffective assistance of counsel. Procedurally there are differences with *Ferreira-Alameda*, but there the court gave appropriate deference to counsel's strategic acts. That deference was informed by the court's determination that the defendant's waiver of his right to a jury trial was knowing, voluntary, and intelligent. So too in this case, Laney's written waiver combined with the Court's colloquy and the Ninth Circuit's holding, inform the consideration of trial counsel's effectiveness. The test for reasonableness of counsel's conduct is "not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

RESPONSE INOPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. 2255 - 13

defendant by the Sixth Amendment." *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) (quoting *Strickland*, 466 U.S. at 687, 689).

The choices made by Laney's trial counsel were reasonable and strategic. For example, the defense believed a bench trial was a good strategic decision because most of the facts were not in dispute and the case rested on more complex legal issues. *See* (ECF No. 1, Exhibit B.) The Court's pronouncement of verdict in this case echoed that sentiment, finding "most of the issues were not in dispute." (Cr. Dkt. 99 at 4.) The defense was also able to get into evidence that would likely have been barred by Federal Rule of Evidence 403 in front of a jury and make arguments based on state and federal code provisions. The decision was strategic. The claims of ineffective assistance have their genesis in the guilty verdict. Once Laney was convicted, the benefit of hindsight provided him with the motive to challenge the strategic decisions he and his counsel made. However, that is not the standard. The Court should dismiss the ineffective assistance of counsel claim because Laney fails to show his counsel's conduct was unreasonable.

### C. Laney Cannot Establish Prejudice

To establish prejudice, Laney must show "there is a reasonably probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Cochrane*, 985 F.2d 1027, 1030 (9th Cir. 1993). Laney's case involves a jury trial waiver and the proceeding was a bench trial. To show prejudice, Laney needs to establish that the result of the proceeding—that is the trial—would have been different. *See Hensley v. Christ*, 67 F.3d 181, 185 (9th Cir. 1995) (finding defendant who waived jury trial and proceeded on stipulated facts could not prove prejudice because the defendant could not show "reasonable probability that the result of the case would have been different if he had proceeded to trial."). Laney cannot make that showing and does not attempt

to do so.³ Instead, Laney brushes over the prejudice prong conclusively stating he would have insisted on proceeding to jury trial and citing to *Hill v. Lockhart*, 474 U.S. 52 (1985) which involved a guilty plea. Those are not the circumstances in this case. Laney does not argue that the outcome of the trial would have been different. Thus, he cannot show prejudice, and the Court should dismiss the ineffective assistance of counsel claim.

### III. Laney was Properly Convicted of Aggravated Identity Theft

Setting aside whether a § 2255 motion is the appropriate procedural vehicle, Laney's appeal to *Dubin* is meritless.⁴ The Supreme Court held that "§ 1028A(a)(1) is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method." *Dubin*, 143 S. Ct. at 1563. In *Dubin*, the Court identified the crux of the conduct as the overbilling. *Id.* Specifically, the inflation of the value of the services actually provided, while the patient's means of identification was an ancillary part of the billing process. *Id.* In the end, the Court identified that Durbin's fraud misrepresented how and when the services were provided, not who received the services. *Id.* at 1574. That distinction shows why the limitation set forth in *Dubin* does not affect Laney's convictions.

Laney's aggravated identity theft convictions hinges on the who—he used the name and NPIs of nurse practitioners without their authority. Laney was charged and convicted of nine

---

³ Laney does not argue that the outcome of the trial or a jury trial would have been different but for counsel's purported errors, so this claim is waived. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("arguments not raised by a party in its opening brief are deemed waived"); *Torres v. United States Dept. of Homeland Security*, 411 F. Supp. 3d 1036, 1067 (C.D. Cal. 2019) ("The Court need not consider arguments raised for the first time in the Reply").

⁴ The Government argues it is unnecessary for the Court to reach this issue because it is clear that Laney's crimes remain violations of 18 U.S.C. § 1028A.

counts of aggravated identity theft alleging that he "did knowingly cause others to transfer, posses, or use without lawful authority, a means of identification of another person." (Cr. Dkt. 47 at 7.) Each count alleges the means of identification Laney used without lawful authority were the name and NPI number of a specific nurse practitioner. (Cr. Dkt. 47 at 7.) In pronouncing verdict, the court noted there were certain "key issues" that were disputed. (Cr. Dkt. 99 at 5.) Among them, the Court highlighted the issue of "whether the health care providers agreed to be medical directors for the facilities" and "whether the defendant intentionally and willfully used the health care providers' signatures and NPI number with the victims' knowledge of the purpose for which they would be used." (Cr. Dkt. 99 at 5-6.) In other words, without Laney's unlawful use of the nurse practitioners' names and NPI numbers, the scheme failed.

This is not an overbilling case like *Dubin* where the health care fraud scheme involved inflating billing codes and the alleged aggravated identity theft was the misuse of patient information that, if the bills were not inflated, would have been properly used. No, Laney needed to misuse the nurse practitioner's names and NPI numbers in order for his scheme to succeed. Without the names and NPI numbers of health care providers, bills could not be submitted to Medicare and Medicaid for compensation. Those unique NPI numbers and names allowed Laney's employer to get paid and, in return, Laney to get paid. The aggravated identity theft was the crux of the scheme. Because of that, *Dubin* does not affect Laney's aggravated identity theft convictions. As such, the Court should deny Laney's claim.[5]

---

[5] The Government does not concede that Laney has properly shown ineffective assistance of counsel in relation to this argument, either by unreasonable conduct or prejudice. However, the Government believes the Court does not need to reach the issue because *Dubin* does not alter the validity of Laney's aggravated identity theft convictions.

RESPONSE INOPPOSITION TO MOTION TO SET ASIDE, VACATE, OR CORRECT
SENTENCE PURSUANT TO 28 U.S.C. 2255 - 16

## IV. Laney is Not Entitled to a Hearing

This Court should deny Laney's § 2255 motion without a hearing. The district court may summarily dismiss a motion under § 2255 without holding an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also* Rule 4(b) and 8(a) of the Rules Governing Proceedings Under § 2255. The district court may make that determination based on discovery or documentary evidence in the record, its own notes and recollections of the plea hearing and sentencing process to supplement the record, and on common sense. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). The district court must provide a habeas petitioner a "full opportunity for presentation of the relevant facts," but whether to do so through documentary testimony and evidence or a live hearing is a "choice of method [entrusted] to the court's discretion." *Id.* (internal quotations and citations omitted).

In this case, the relevant facts are available to the Court to review through numerous motions, transcripts, orders, appellate record, and affidavits, without the need for an evidentiary hearing. and an affidavit from one of Ortega's prior attorneys, without the need for an evidentiary hearing. Additionally, this Court presided as the finder of fact over Laney's trial and, therefore, can rely on its own notes and recollections to supplement the record. These records conclusively show that Laney is not entitled to any relief. For that reason, the Government respectfully requests the Court deny the request for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, none of Laney's assertions raise a factual dispute for which a hearing is necessary, and none warrant relief. Therefore, the Government respectfully requests that this Court deny Laney's § 2255 Motion without a hearing.


Respectfully submitted this 28th day of September, 2023.

                                                   JOSHUA D. HURWIT
                                                   UNITED STATES ATTORNEY
                                                   By:


                                                   _/s/ Darci W. Crane_
                                                   DARCI W. CRANE
                                                   Assistant United States Attorney